**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Adijat Edwards,<br><br>  Petitioner,<br><br>v.<br><br>United States Immigration and Customs Enforcement Division of the Department of Homeland Security; United States Department of Homeland Security; Janet Napolitano, Secretary of Department of Homeland Security; and Scott Baniecke, St. Paul Field Office Director for Detention and Removal Operation;<br><br>  Respondents. | Civ. No. 11-320 (JNE/JJK)<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Richard L. Breitman, Esq. Breitman Immigration Law Firm, counsel for Petitioner.

Friedrich A. P. Siekert, Esq., Assistant United States Attorney, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1).  The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court recommends that the Petition be denied.

## BACKGROUND

Petitioner is a 40-year-old woman and a citizen of Nigeria, who originally entered the United States on or about July 11, 1998, as a visitor. In 2001, she married Spence Edwards, a U.S. citizen. Mr. Edwards then petitioned to have Petitioner qualified as the spouse of a U.S. citizen so that she could seek Lawful Permanent Resident status ("LPR Status") in the United States. For marriages less than two years old, LPR Status is conferred on a conditional basis. *See* 8 U.S.C. § 1186a(a). A later filing of a joint petition or waiver on an I-751 application is required to remove the condition. *See id.* § 1186a(d). In accordance with these requirements, the Department of Homeland Security ("DHS") approved Mr. Edwards's petition and granted Petitioner LPR Status on a conditional basis on July 26, 2002.

On July 21, 2006, Petitioner and Mr. Edwards filed an I-751 application to remove the condition so that Petitioner would receive full permanent resident status. The DHS then proceeded with an investigation to determine whether there was a bona fide marriage or whether the marriage was entered into solely for the purpose of obtaining immigration benefits. The investigation took four years and on June 22, 2010, the DHS notified Petitioner of its intent to deny the I-751 application because it had concluded that there was a lack of requisite evidence to show that the marriage was in good faith and not entered into for immigration purposes. (Doc. No. 13, Administrative Record ("Admin. Rec.") at 17.) On July 21, 2010, Petitioner's attorney responded and submitted affidavits

and documentary evidence to the DHS to support the argument that the marriage was bona fide.  (Doc. No. 17, Ex. A at 1.)

On October 7, 2010, Petitioner's attorney informed the DHS that Petitioner wanted to go to Nigeria to be with her daughter who was going to have surgery. (Doc. No. 17, Ex. B.)  On October 26, 2010, the attorney received a reply from the United States Citizenship and Immigration Services ("USCIS") field office director who had authored the June 22, 2010 notice of intent to deny the I-751 application, stating that:  "A final decision has not been made on this I-751 application.  If Mrs. Edwards has a need to travel, she can make an INFOPASS appointment to obtain a temporary I-551 stamp in her passport."  (Doc. No. 17, Ex. C.)  Petitioner had already received a temporary I-551 stamp earlier in the year and was entitled to have the stamp placed on her passport because of her status as a conditional lawful permanent resident of the United States.[1]  The temporary I-551 stamp on Petitioner's passport said: "Upon endorsement, serves as temporary I-551 evidencing permanent residency for one year" and had an issue date of March 16, 2010.  (Doc. No. 17, Ex. D at D-2.)

In November 2010, Petitioner went on her trip to Nigeria and did not return to the United States until late January 2011.  On December 2, 2010, the DHS

---

[1] One of the benefits a conditional lawful permanent resident enjoys is the right to travel abroad and return to the United States.  8 C.F.R. § 103.2(b)(17) (stating that "in the absence of countervailing evidence," a "passport [ ] . . . endorsed to show admission for permanent resident status . . . will be regarded as establishing lawful admission for permanent residence").

3

issued its decision denying the I-175 application. (Admin. Rec. at 11.) The DHS concluded that Petitioner's marriage was a sham, as it "was entered into for the purpose of procuring an alien's admission as an immigrant." (*Id.* at 12.) Thus, pursuant to section 216(b)(1)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1186a(b), Petitioner's permanent resident status was terminated. The decision was sent by certified mail to Petitioner's attorney and to her at her home address in Minneapolis. (Admin. Rec. at 11.) In the decision, the DHS informed Petitioner that in accordance with section 216 of the INA, 8 U.S.C. § 1186a(b)(2), she "may request a review of this determination in deportation proceedings." (*Id.* at 14.) INA § 216(b)(2) provides that:

> Any alien whose permanent resident status is terminated under paragraph (1) [which includes termination because of a sham marriage] may request a review of such determination in a proceeding to remove the alien. In such proceeding, the burden of proof shall be on the Attorney General to establish, by a preponderance of the evidence, that a condition described in paragraph (1) is met.

The stage was thus set for removal proceeding under section 240 of the INA, 8 U.S.C. § 1229a, in which Petitioner could request a review of the administrative decision denying the I-751 application.

The DHS did initiate a removal proceeding and a Notice to Appear in immigration court was issued on December 9, 2010, informing Petitioner that the DHS was seeking a removal order to deport Petitioner because, *inter alia*, her status as a conditional lawful permanent resident had been terminated because of the sham marriage. (Admin. Rec. at 21.) The Notice to Appear stated that the

4

date and time for Petitioner's appearance before an Immigration Judge ("IJ") to show why she should not be removed from the United States was to be set at a later date. (*Id.*) This Notice to Appear was sent to Petitioner at her address of record and to the attorney who had been her counsel of record in connection with the I-751 application. (*See id.* at 20, 22.)

On January 31, 2011, Petitioner returned from Nigeria to the United States, arriving at the Minneapolis/St. Paul airport. She was traveling on her Nigerian passport which had the temporary I-551 stamp on it. When officials from U.S. Customs and Border Protection ("CBP") inspected Petitioner, they found that the DHS had issued its decision on December 2, 2010, denying the I-751 application and that the December 9, 2010 Notice to Appear had been issued. They concluded that Petitioner "appear[ed] to be inadmissible to the United States pursuant to sections 212(a)(7)(A)(i)(I), and 212(a)(6)(C)(i) of the INA," and "processed [her] for expedited removal based on the marriage fraud finding and also as she was seeking entry to resume her LPR status, which was terminated." (*Id.* at 9.) Customs officials further found that Petitioner would "be processed for expedited removal with limited IJ review" and would "remain in the custody of CBP, until processing and turn[ed] over to [Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations]." (*Id.*)

Upon learning that Petitioner was in custody, Petitioner's attorney communicated with DHS officials and expressed his opinion that Petitioner should be let out of custody and that her removal proceeding that was the subject

of the December 9, 2010 Notice to Appear should go forward, at which time she would have the opportunity to contest the DHS decision denying the I-751 application. Petitioner's attorney also filed a petition with the Immigration Court, requesting that Petitioner be bonded out of custody. The bond request was based on the argument that the Notice to Appear had been issued while Petitioner was abroad, that "[s]he ha[d] the right to a hearing before the Immigration Judge who [would] make a final ruling on her I-751 [application]," and that "[s]he [was] not an arriving alien inasmuch as the INA and regulations require she be given temporary proof of Conditional Permanent Resident status." (Doc. No. 19, Ex. H at H-1.)

A hearing was set on the bond petition for 10:00 a.m. on February 8, 2011. On February 8, 2011, within an hour of the hearing, Petitioner's attorney learned that Petitioner had been taken to the airport to be deported pursuant to the expedited removal process. At approximately 2:00 p.m., Petitioner's attorney filed the instant habeas petition in federal court (the Petition is time-stamped 2:07 p.m., *see* Doc. No. 1), along with a motion for a temporary restraining order to enjoin the Respondents "from removing [P]etitioner from the United States." (Doc. No. 2.) A hearing was held on the temporary restraining order starting at 3:15 p.m., and the motion was "granted on the record conditioned on proof provided by Petitioner that this Court had jurisdiction to issue an order as of 5:25 p.m." (Doc. No. 8.)

As it turned out, Petitioner was removed from the United States on a flight that left the Minneapolis/St. Paul airport at 3:17 p.m.  Apparently, Petitioner's attorney learned about this sometime after 5:45 p.m. on February 8—i.e., after the temporary restraining order issued—when he spoke to a DHS official who advised him that the plane had already departed.  (Doc. No. 11, Decl. of Richard Breitman ("Breitman Decl.") ¶¶ 6–8.)  The next day, the Court vacated its temporary restraining order to enjoin the removal, finding that "Petitioner ha[d] not provided proof of jurisdiction as required," as the removal had already occurred when the order was entered.  (Doc. No. 9, 2/9/11 Order.)

Even though Petitioner was removed from the country, this habeas action has continued.  Petitioner now seeks, in habeas relief from this Court, "the writ to order that [P]etitioner be returned to the United States by DHS or ICE, and that she be permitted to present her case for removal of the condition on her Lawful Permanent Resident Status to an Immigration Judge which is the proper process for such a determination."  (Doc. No. 16, Pet'rs Reply to Resp't's Return to Pet. for Writ of Habeas Corpus and Order to Show Cause 14.)  As explained below, this Court concludes that as a threshold matter, there is no subject-matter jurisdiction in this case and the writ should be denied.[2]

---

2  "The writ of habeas corpus does not act upon the person who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95 (1973) (citing *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).  The Government argues that this Court does not have jurisdiction because the Petitioner is not in custody, having
(Footnote Continued on Next Page)

## ANALYSIS

Petitioner seeks habeas review of the Government's decision to remove her through an expedited removal order.  8 U.S.C. § 1225(b)(1).  She argues that the Government was required to remove her through the full-fledged removal proceeding under section 240 of the INA, 8 U.S.C. § 1229a, in which she would have had an opportunity to contest the administrative decision denying the I-751 application and in which the DHS would have been required to prove that her marriage was a sham.  This Court concludes, consistent with other federal court rulings, that Congress has stripped the court of authority to review, in habeas, the decision of the immigration authorities to expeditiously remove Petitioner from the United States on February 8, 2011, rather than conduct a removal

---

(Footnote Continued from Previous Page)
been deported on February 8, 2011.  The Petitioner was, however, in custody of immigration officials in the United States when the Petition was filed in federal court at 2:07 p.m. on February 8, 2011; the flight on which Petitioner was deported did not leave the Minneapolis/St. Paul airport until 3:17 p.m.  (Doc. No. 14, Return to Pet. for Writ of Habeas Corpus and Order to Show Cause 4; Breitman Decl. ¶ 8.)

      Petitioner's deportation to Nigeria after the habeas petition was filed therefore raises the issue of whether the habeas action is now moot because Respondent no longer has Petitioner in custody.  But the habeas action would not be moot if Petitioner can show that there is still a case or controversy, i.e., if she can show that she faced "collateral consequences" that will be redressed by a favorable ruling on her habeas petition.  *Chong v. INS*, 264 F.3d 378, 383 (9th Cir. 2001) (finding that an alien who has been deported and is no longer in custody must show continuing collateral consequences to meet the Article III case or controversy requirement).  This Court, however, need not reach this factual issue because, as a threshold matter, it concludes that it lacks subject-matter jurisdiction.

proceeding under section 240 of the INA, 8 U.S.C. § 1229a.  *See Khan v. Holder*, 608 F.3d 325, 329–30 (7th Cir. 2010) (holding that the court lacked jurisdiction to inquire whether the expedited removal procedure to which the Plaintiff was subjected was properly invoked); *Vaupel v. Ortiz*, 244 F. App'x. 892, 895 (10th Cir. 2007) (stating that "[t]he language of the statute clearly and unambiguously precludes review in a habeas proceeding of 'whether the alien is actually inadmissible or entitled to any relief from removal[,]" and also holding that the court lacked jurisdiction to consider petitioner's claim that the expedited removal procedures violated his right to due process under § 1252(a)(2)(A)) (quoting 8 U.S.C. § 1252(e)(5)); *Brumme v. INS*, 275 F.3d 443, 447–48 (5th Cir. 2001) ("[T]he language of § 1252(e)(2) clearly operates, at the very least, to *limit* the scope of review in a habeas proceeding involving determinations made under § 1225(b)(1).") (emphasis in original); *Khedri v. Sedlock*, No. 09 C 6483, 2009 WL 3380681, at *2–3 (N.D. Ill. Oct. 20, 2009) (concluding that the court did not have jurisdiction to review the merits of petitioner's removal order, and stating that the statute [8 U.S.C. § 1186a(c)(3)(C)] "is clear that an alien does not retain permanent resident status pending [the review of the Attorney General's revocation of an alien's conditional permanent resident status]").  In other words, this Court does not have subject-matter jurisdiction to review the Government's decision to place Petitioner in the expedited removal process and to order her removed pursuant to a congressionally authorized expedited removal process.  *See* 8 U.S.C. § 1225(b)(1) ("If an immigration officer determines that an alien

who is arriving in the United States . . . is inadmissible under . . . [8 U.S.C. §] 1182(a)(7) . . . the officer shall order the alien removed from the United States without further hearing or review[.]").

The scope of judicial review of orders of removal under § 1225(b)(1) is extremely narrow. With very limited exceptions, "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Specifically, no court has jurisdiction to review "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]," "the application of [that] section to individual aliens," or "procedures and policies adopted by the Attorney General to implement [that section]." *Id.* § 1252(a)(2)(A)(ii)–(iv).

Judicial review of determinations made under § 1225(b)(1) is available in habeas corpus proceedings, but such review has also been limited by Congress:

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings but shall be limited to determinations of—
>
> (A)  whether the petitioner is an alien,
>
> (B)  whether the petitioner was ordered removed under such section, and
>
> (C)  whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to

10

such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2). Section 1252(e)(5) further provides that in determining whether an alien has been ordered removed under section 1225(b)(1), "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5). Thus, under section 1252(e) this Court may review only whether Petitioner is an alien, whether she has been ordered removed (as limited by section 1252(e)(5)), and whether she can prove she is a permanent resident. It is undisputed that Petitioner is an alien, so this Court's analysis focuses on the other two subject areas.

## I.    Ordered Removed Under § 1225(b)(1)

Petitioner does not dispute the fact that she was ordered removed on an expedited removal order under § 1225(b)(1). Rather, she asks us to review the legality of the application of the expedited removal process in her circumstances. She claims that the expedited removal process should not have been utilized in her case because, pursuant to section 240 of the INA, she was entitled to a removal hearing before an IJ in which she could contest the DHS decision that her marriage was a sham. However, sections 1252(e)(2) and 1252(e)(5) preclude judicial review of whether the expedited removal process was lawfully applied to a particular alien. *See Vaupel*, 244 F. App'x. at 895 (noting that the

"language of the statute clearly and unambiguously precludes review in a habeas proceeding of 'whether the alien is actually inadmissible or entitled to any relief from removal'") (quoting 8 U.S.C. § 1252(e)(5)); *Brumme v. INS*, 275 F.3d 443, 447–48 (5th Cir. 2001) (stating that § 1252(e)(2) limits the scope of review in a habeas proceeding involving determinations made under § 1225(b)(1)).  This Court thus lacks the authority to review Petitioner's claim that the expedited removal process should not have been utilized in her case.

## II.     Proof of Lawful Permanent Resident Status

When the DHS revoked Petitioner's conditional permanent resident status, the status was revoked "as of the date of the determination."  8 U.S.C. § 1186a(c)(3)(C) ("[T]he Attorney General . . . shall terminate the permanent resident status of an alien spouse . . . as of the date of determination."); *see also* 8 C.F.R. § 1216.4(d)(2) ("The alien's lawful permanent resident status shall be terminated as of the date of the director's written decision.").  Although the director's decision can be reviewed in the alien's removal proceeding, 8 U.S.C. § 1186(c)(3)(D), the statute is clear that an alien does not retain permanent resident status pending such review:  "Any alien whose permanent resident status *is terminated* . . . may request a review of such determination in a proceeding to remove the alien . . . ."  *Id.* (emphasis added).

Petitioner argues that the fact that a temporary I-551 stamp was put on her passport before she left the country establishes that when she returned she was entitled to be treated as having the status of a lawful permanent resident.

12

However, this argument ignores other important facts that bear on Petitioner's status at the time of her return to the United States. When Petitioner's status was adjusted to conditional lawful permanent resident upon her marriage to a U.S. citizen, she was entitled to enjoy the benefits of being a lawful permanent resident including, for example, employment authorization, various government benefits, and the right to travel. Thus, while her I-751 application was pending she was entitled to have her passport stamped to reflect this conditional status. As mentioned, Petitioner's passport was indeed stamped to read: "Upon endorsement, serves as temporary I-551, evidencing permanent residency for one year. Issue Date 3-16-10 . . . ." (Doc. No. 17, Ex. D at D-2.)[3] Below the stamp there is a written notation "I-751 pending." (*Id.*) It is true that the applicable regulation states that "in the absence of countervailing evidence," a "passport [ ] . . . endorsed to show admission for permanent resident status . . . will be regarded as establishing lawful admission for permanent residence." 8 C.F.R. § 103.2(6)(17). However, when Petitioner arrived back in the United States on January 31, 2011, there was "countervailing evidence" that Petitioner no longer had any lawful permanent resident status because her conditional lawful permanent resident status had been revoked upon the administrative denial of her I-751 application. The existence of the temporary I-551 stamp on

---

[3]   Although the stamp is difficult to read on the copy provided to the Court, it is quoted in Petitioner's Reply at footnote 2 and this language is the same as that appearing on an earlier temporary I-551 stamp placed on Petitioner's passport in 2009 (Doc. No. 17, Ex. D at D-1), which is legible.

her passport, which was placed on the passport eight months before the conditional status was revoked, does not trump this termination of her lawful permanent resident status.  As discussed above, this Court's ability to review any determination made by the immigration authorities in the expedited removal process must end upon the determination that the lawful permanent resident status was terminated.  8 U.S.C. § 1252(e)(2) ("Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings but shall be limited to determinations of . . . whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence . . . such status *not having been terminated* . . . .") (emphasis added).

### III.    Exception for Verified Lawful Permanent Residents is Inapplicable

Petitioner also argues that the only way she could be removed from the United States is through the full hearing process under section 480 of the INA. She bases this on the fact that (a) the INA provides that an alien whose permanent resident status is terminated because of marriage fraud may request a review of such determination in a proceeding to remove the alien (INA § 216(b)(2); 8 U.S.C. § 1186a(b)(2)); and (b) by regulation, if the claim to lawful permanent resident status is "verified," and such status has not been terminated in exclusion, deportation, or removal proceedings, the examining immigration officer shall not order the alien removed pursuant to the expedited removal

process. 8 C.F.R. § 235.3(b)(5)(ii).  But these provisions did not bar the immigration authorities from utilizing expedited removal in Petitioner's case.

Petitioner's claim to be a lawful permanent resident was in fact not "verified" as that term is used in § 235.3(b)(5)(ii) because the border authorities discovered upon her arrival on January 31, 2011, that her status had been revoked by final administrative action on December 10, 2010.  In that circumstance—where the alien has an unverified claim that she is a lawful permanent resident status—the regulations provide that if the person swears under oath on penalty of perjury that she is a lawful permanent resident then an immigration judge may do a very limited review of the matter:  "If the immigration judge determines that the alien was once so admitted as a lawful permanent resident . . . *and such status has not been terminated by final administrative action* the immigration judge will terminate proceedings and vacate the expedited removal order."  8 C.F.R. § 235.3(b)(5)(iv) (emphasis added).  It is only after these conditions are met that the case moves to a section 240 removal hearing.  *Id*.  In this case, of course, Petitioner's status as a lawful permanent resident *had* been terminated by final administrative action on December 10, 2010.  So, even if Petitioner signed an oath under penalty of perjury that she was a lawful permanent resident, there was no bar to her expedited removal by either statute or regulation.  Thus, this Court is not confronted with a case where there is a direct conflict, as Petitioner suggests, between a Congressional mandate that Petitioner only be removed through a full removal hearing process and a

15

truncated expedited removal process.  Here, review in habeas of the decision to apply the expedited removal process is clearly foreclosed by the habeas stripping provisions of 8 U.S.C. § 1252(a)(2)(A) and 8 U.S.C. § 1252(e).

## IV.    Due Process

Petitioner also contends that she is entitled to habeas relief because the Government has allegedly violated her constitutional right to due process guaranteed by the Fifth Amendment.  Petitioner claims she had a "substantive due process interest in remaining with her United States citizen husband of nine years." (Doc. No. 1 at 6.)  The alleged constitutional violation is specifically articulated as follows:  "Any interest respondent's (sic) have in detaining and deporting petitioner does not justify her removal prior to adjudication of her I-751 by an Immigration Judge, particularly given her substantive due process interest in remaining with her United States citizen husband of nine years." (*Id.*)

Although couched in constitutional terms, this due process claim is another variation of Petitioner's argument that the immigration authorities should not have utilized the expedited removal procedure of § 1225(b)(1), but should have instead utilized a removal hearing before the immigration under section 240 of the INA.  As explained above, under § 1252(a)(2)(A) this Court does not have subject-matter jurisdiction to hear that claim.  There is no exception in § 1252(e) allowing this Court to bypass § 1252(a)(2)(A) and the limitations in § 1252(b)(1) simply because Petitioner characterizes her claim as a constitutional one.  For example, in another context, Congress has specifically authorized judicial review

of constitutional claims, notwithstanding statutory limitations on judicial review. *See* 8 U.S.C. § 1252(a)(2)(D). But that provision applies to the construction of subparagraphs (B) and (C) of § 1252(a)(2), which are inapplicable here, and explicitly does not apply to other provisions of § 1252 limiting judicial review. It is also applicable only to constitutional claims raised in petitions for review filed in an appropriate court of appeals. *See id.* § 1252(a)(2)(D). Therefore, this Court concludes that it lacks subject-matter jurisdiction to hear Petitioner's due process claim as well.

## RECOMMENDATION

Based on the above, and on all the files, records, and submissions herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Motion to Accept Exhibits (Doc. No. 20), be **GRANTED**;

2. Petitioner's Petition (Doc. No. 1), be **DENIED**; and

3. This case be **DISMISSED WITH PREJUDICE**.


Dated: August 9, 2011

                                         *s/ Jeffrey J. Keyes*
                                         JEFFREY J. KEYES
                                         United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 23, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo

determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.